IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARITA R. STRAWN,

    Plaintiff,                                  No. CIV S-06-0973 DAD

    vs.

MICHAEL J. ASTRUE,                       <u>ORDER</u>
Commissioner of Social Security,[1]

    Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's brief, construed as a motion for summary judgment, and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        Plaintiff Carita R. Strawn applied for Social Security Disability benefits under Title II of the Social Security Act (the Act) on August 26, 2003, alleging an onset date of July 18,

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1

2002.  (Transcript (Tr.) at 92-95.)  The Commissioner denied plaintiff's application initially on January 8, 2004, and again upon reconsideration on March 26, 2004.  (Tr. at 67-78.)  In May 2004, plaintiff requested a hearing before an administrative law judge (ALJ).  (Tr. at 49.)  Plaintiff was represented by counsel at the hearing held on December 13, 2004.  (Tr. at 319-34.)  In his decision issued on March 5, 2005, the ALJ determined that plaintiff was not disabled through the date of the decision.  (Tr. at 57-65.)  The ALJ entered the following findings:

> 1. Claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. Claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. Claimant's degenerative disc disease of the lumbar spine is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)).
>
> 4. This medically determinable impairment does not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations Number 4.
>
> 5. Claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. Claimant retains the residual functional capacity to perform a wide range of light work.  Specifically, Claimant is able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds.  She can sit for about six hours and stand and walk for about two hours in an eight-hour workday, but she must change positions every hour for one to two minutes.  Claimant is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.
>
> 7. Claimant's past relevant work as a paralegal did not require performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).
>
> 8. Claimant's medically determinable degenerative disc disease of the lumbar spine does not prevent Claimant from performing her past relevant work.

/////

/////

>9. Claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (20 CFR § 404.1520(f)).

(Tr. at 64-65.)

On February 10, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 42-44, 56.) By letter dated April 10, 2006, plaintiff's counsel requested an extension of time to file a civil action, together with a request to reopen her request for review by the Appeals Council to new consider new evidence. (Tr. at 6-41.) On April 28, 2006, the Appeals Council considered plaintiff's additional evidence, denied her request to reopen, and granted the request for additional time to file a civil action. (Tr. at 4-5.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 4, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

3

substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Yuckert</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////

/////

**APPLICATION**

Plaintiff advances four arguments in her brief.  First, she asserts that the ALJ's finding that she has the residual functional capacity to return to her past relevant work is not based on substantial evidence.  Second, she argues that the ALJ misstated the requirements of Listing 1.04 and then applied the wrong criteria in finding that her impairment does not meet the requirements of Listing 1.04.  Third, she contends that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of her treating chiropractor and her treating orthopedist, both of whom opined that she is more functionally limited than found by the ALJ.  Fourth, she maintains that the ALJ erred in his evaluation of the severity of her depression and failed to state clear and convincing reasons for rejecting the opinion of the consulting psychiatrist.  The court finds plaintiff's fourth argument persuasive and addresses that argument below.

It is well established that at step two of the sequential evaluation process the ALJ is required to determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  A medically determinable impairment or combination of impairments is considered severe if it "significantly limits the claimant's physical or mental ability to do basic work activities."  20 C.F.R.§ 404.1520(c).

The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairments are so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations omitted).  See also 20 C.F.R. § 404.1521(a).

Here, the record reflects that plaintiff alleged disability caused by lower back injury, herniated disc, and disc degeneration, with an onset date of July 18, 2002.  (Tr. at 105.)

After the Commissioner's initial denial of her application for benefits, plaintiff sought reconsideration in March 2004 on the ground that she was unable to work due to her back, left leg/ankle/foot, dizziness, and mental stress. (Tr. at 74, 275-76.) The Commissioner's denial upon reconsideration notes that there is no evidence of any impairment associated with plaintiff's allegation of dizziness but does not address plaintiff's allegation the she suffers from mental stress. (Tr. at 74-75.) In his written decision following the December 13, 2004 administrative hearing, the ALJ concluded his discussion of the medical evidence as follows:

> Finally, Claimant underwent a psychiatric evaluation with Dr. Les Kalman in August 2004 (Exhibit 11F[2]). Claimant complained of back pain and depression. She stated that she had never received any mental health treatment. While Dr. Kalman noted Claimant had a depressed mood, he found her attitude and behavior to be pleasant and cooperative, she had good eye contact, her form of thought was logical and goal directed, she did not exhibit loose associations, mood swings, or delusions. Claimant stated she was able to do the family shopping, cooking, and housekeeping. She could drive, pays bills, and was able to care for her personal hygiene. She described that on a typical day she would get her kids off to school, pick them up, and walk for exercise. Socially, Claimant stated she got along with family and friends. Dr. Kalman diagnosed Claimant with an adjustment disorder with mild to moderate functional limitations.

(Tr. at 62.) Proceeding to step two of the sequential analysis, the ALJ found that plaintiff suffers from the severe impairment of degenerative disc disease of the lumbar spine but that

> Claimant's depression is not a severe impairment, as the evidence fails to establish this condition would significantly limit Claimant's ability to perform basic work activities and has lasted or will last for a period of twelve months as required under the Regulations. Specifically, the only significant finding in Dr. Kalman's report was Claimant appeared to have a depressed mood. His report described good intellectual, social, and daily functioning. Further, Dr. Kaman's [sic] assessment stemmed from a one-time evaluation and other medical treatment notes contained no complaints of depression and no record of mental health treatment.

(Id.)

---

[2] (Tr. at 298-307.)

1   While the medical evidence regarding plaintiff's mental impairment is not
2  extensive, it consists of an uncontradicted opinion by an examining physician. Les Kalman,
3  M.D., Psy.D., M.F.C.C., examined plaintiff on August 24, 2004. (Tr. at 299.) Dr. Kalman's
4  clinical examination was accompanied by consideration of the extensive medical records
5  provided to him and itemized as part of his report dated October 26, 2004. (Tr. at 299, 302.)

6   After careful consideration of the ALJ's decision and Dr. Kalman's opinion, the
7  undersigned finds that the ALJ's description of Dr. Kalman's evaluation is inaccurate in several
8  respects. While the ALJ represents that "Claimant stated she was able to do the family shopping,
9  cooking, and housekeeping," Dr. Kalman's evaluation reflects that "the patient is able to do her
10 own shopping, cooking and housekeeping *on a limited basis as physically able*." (Tr. at 62, 301
11 (emphasis added).) While the ALJ states that "She described that on a typical day she would get
12 her kids off to school, pick them up, and walk for exercise," Dr. Kalman quoted plaintiff as
13 saying she can "'get the kids off to school, pick the kids up, *walk sometimes, if I can do it*.'" (Tr.
14 at 62, 301 (emphasis added).)

15   More importantly, the ALJ erroneously states that the only significant finding in
16 Dr. Kalman's report is that plaintiff appeared to have a depressed mood. (Tr. at 62.) In fact, Dr.
17 Kalman's report indicates that plaintiff's ability to perform basic work activities is significantly
18 limited by her adjustment disorder and chronic depression. (Tr. at 301, 303-07.) In the area of
19 sustained concentration and persistence, Dr. Kalman found plaintiff moderately limited[3] in her
20 ability to carry out detailed instructions, whether repetitive or not; in her ability to maintain
21 attention and concentration for extended periods, such as the four two-hour periods in a workday;
22 and in her ability to complete a normal workday and workweek without interruptions from

---

[3] The assessment form completed by Dr. Kalman defines "moderately limited" as follows: "Performance of the designated work-related mental function is not totally precluded, but it is substantially impaired in terms of speed and accuracy and can be performed only seldom to occasionally during an 8-hour workday, for example, for short durations lasting from 5 to 15 minutes not totalling more than 2 to 3 hours in an 8-hour workday." (Tr. at 303.)

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and unreasonable length of rest periods. (Tr. at 304.) In the area of social interaction, Dr. Kalman found plaintiff moderately limited in her ability to accept instructions and to respond appropriately to criticism from supervisors as well as in her ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (Tr. at 307.) In the area of adaptation, Dr. Kalman found plaintiff moderately limited in her ability to respond appropriately to changes, whether expected or unexpected, in the work setting. (Id.)

Dr. Kalman also found that the following work stressors would increase plaintiff's level of impairment: demanding or disagreeable customers; production demands or quotas; a demand for precision and intolerance of error rates exceeding 5 to 10 percent; a need to make accurate, independent decisions in problem solving on a consistent basis; and a need to make such decisions quickly. (Id.) Thus, the abilities he found to be moderately limited could become markedly limited[4] in the presence of a work stressor, while other abilities he found to be mildly limited could become moderately limited. (Id.) In the latter category are plaintiff's abilities to understand and remember detailed instructions or tasks, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being unduly distracted by them, to be aware of normal hazards and take appropriate precautions, to travel to unfamiliar places and/or use public transportation, and to set realistic goals or to make plans independently of others. (Tr. at 304, 307.)

With regard to the expected duration of plaintiff's mental impairment, it was Dr. Kalman's opinion that plaintiff's "prognosis is not expected to improve significantly in the next twelve months unless her medical condition improves." (Tr. at 301.)

/////

---

[4] The assessment form defines "markedly limited" as follows: "Performance of the designated work-related mental function is totally precluded on a sustained basis and would result in failure after even short durations, for example from 5 to 15 minutes." (Tr. at 303.)

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). Here, the ALJ discounted the uncontradicted opinion of the examining psychiatrist in this case without stating clear and convincing reasons for doing so. Dr. Kalman's opinion is based on his examination of plaintiff as well as a review of objective medical data and the reports of the physicians treating plaintiff's physical impairments. Cf. Bayliss, 427 F.3d at 1217 (affirming ALJ's rejection of psychological assessments by doctors who did not review objective medical data or reports from treating physicians or counselors and based their opinions solely on the claimant's complaints and information from her family, friends, and a former counselor); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

In the absence of any evidence that supports the ALJ's decision not to rely on Dr. Kalman's assessment at step two, the undersigned finds that the ALJ erred in finding that plaintiff's depression is not a severe impairment. In reaching this conclusion the court is particularly mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54). See also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Remand is required so that an ALJ can proceed beyond step two of the sequential evaluation process with respect to all of plaintiff's impairments.

## CONCLUSION

In light of the remand required by the ALJ's error at step two, the court will not address plaintiff's arguments concerning errors at subsequent steps. See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) (having concluded that remand is appropriate because the ALJ erred at step two, the court need not consider other issues).

On remand, the ALJ will necessarily be required to re-determine plaintiff's residual functional capacity in light of all her impairments and the entire record, and to reconsider whether plaintiff is capable of performing her past relevant work or any other work in the national economy. Proper weight must be given to the opinions of treating and examining physicians. See Lester, 81 F.3d at 830; Smolen, 80 F.3d at 1285. Any defect with regard to development of the record can also be cured on remand.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's brief, construed as a motion for summary judgment or remand, is granted;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner of Social Security is reversed, and this case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: September 27, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/strawn0973.order